IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sara Elise Ain,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of the Social Security Administration,<br><br>Defendant. | No. CV-24-00008-DLR (ESW)<br><br>**REPORT<br>AND RECOMMENDATION** |

**TO THE HONORABLE DOUGLAS L. RAYES, SENIOR UNITED STATES DISTRICT JUDGE:**

Pending before the Court is Sara Elise Ain's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her application for disability insurance benefits. The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.

After reviewing the Administrative Record ("A.R.") and the parties' briefing (Docs. 19, 21, 22), the undersigned finds that the Administrative Law Judge's ("ALJ") decision contains harmful legal error. For the reasons explained in Section II below, it is

recommended that the decision be reversed and the case remanded to the Commissioner of Social Security for further proceedings.

# I. LEGAL STANDARDS

## A. Disability Analysis: Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act also provides for supplemental security income to certain individuals who are aged 65 or older, blind, or disabled and have limited income. 42 U.S.C. § 1382. To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. *Id.*

To decide if a claimant is entitled to Social Security disability benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability

---

[1] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

- 2 -

benefits are denied at this step. Otherwise, the ALJ proceeds to step three.

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f), 416.920(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id*.

**B. Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v.*

---

[2] *Parra*, 481 F.3d at 746.

- 3 -

*Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court also considers the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II.  PLAINTIFF'S APPEAL

### A.  Procedural Background

Plaintiff, who was born in 1984, has past relevant work as a systems analyst and end user consultant. (A.R. 34, 35). In December 2020, Plaintiff protectively filed an application for disability insurance benefits, alleging she became disabled on March 4, 2020 due to reflex sympathetic dystrophy and traumatic brain injury. (A.R. 21, 1161, 1278).

Social Security denied Plaintiff's application initially on August 3, 2021, and upon reconsideration on March 18, 2022. (A.R. 1151, 1180). Plaintiff requested a hearing before an ALJ. (A.R. 1202). An ALJ conducted a hearing on January 30, 2023. (A.R. 1127-50). In his April 4, 2023 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (A.R. 21-42).

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied her request on November 20, 2023, making the ALJ's decision the final decision of the Commissioner. (A.R. 1-7). On January 3, 2024, Plaintiff filed a Complaint (Doc. 1) seeking judicial review and reversal of the ALJ's decision. Plaintiff filed an Opening Brief (Doc. 19) on May 20, 2024, and the Commissioner filed an Answering Brief (Doc. 21) on June 13, 2024. Plaintiff filed a Reply Brief (Doc. 22) on June 21, 2024.

**B. The ALJ's Application of the Five-Step Disability Analysis**

**1. Step One: Engagement in "Substantial Gainful Activity"**

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 4, 2020, the alleged onset date. (A.R. 23). Neither party disputes this determination.

**2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments**

The ALJ found that Plaintiff has the following severe impairments: traumatic brain injury/post-concussive syndrome; anxiety; depression; obesity; type-2 diabetes mellitus with hyperglycemia; post-procedural hypothyroidism; and complex regional pain syndrome ("CRPS"). (A.R. 23). This determination is undisputed.

**3. Step Three: Presence of Listed Impairment(s)**

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 24). Neither party disputes the ALJ's determination at this step.

**4. Steps Four and Five: Capacity to Perform Work**

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> She is able to sit for a total of eight hours in an eight-hour workday. She is able to push and/or pull without limit other than as shown for lift and/or carry. She can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. This individual is able to occasionally climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme cold and extreme heat. This individual cannot work around hazards, such as dangerous moving machinery and unprotected heights. She is limited to simple and repetitive tasks. She can understand, remember, and follow one to two-step instructions. She can have frequent contact with coworkers, supervisors, and the general public.

(A.R. 26). The ALJ found that Plaintiff is unable to perform her past relevant work as a systems analyst or end user consultant. (A.R. 34). However, based on the assessed RFC, Plaintiff's age, education, work experience, and the VE's testimony, the ALJ determined that Plaintiff can perform other jobs existing in significant numbers in the national economy, such as cleaner and advertising materials distributor. (A.R. 35). Therefore, the ALJ concluded that Plaintiff is not disabled. (A.R. 36). Plaintiff argues that the ALJ committed reversible error by rejecting her treating mental health provider's opinions and her symptom testimony without sufficient explanation. (Doc. 19 at 15-24).

**C. The ALJ's Evaluation of the Medical Source Opinions**

**1. Legal Standards**

For disability claims filed after March 27, 2017, revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). The revised regulations provide that Social Security "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).

Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions. As the Ninth Circuit has explained, the revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating physician. *Woods v. Kijakazi*, 32 F.4th 785, 788-92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [Social Security] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (i) supportability; (ii) consistency; (iii) relationship with the claimant; (iv) specialization; and (v) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c)(1)-(5). As set forth in Section 404.1520c(a), the "most important factors" Social Security considers when evaluating "the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency[.]"

Regarding the supportability factor, the regulations provide that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Section 404.1520c(b)(2) provides that Social Security "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." Social Security "may, but [is] not required to, explain how [it] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, Social Security is "not required to articulate how [it] considered evidence from nonmedical sources." 20

C.F.R. § 404.1520c(d).

## 2. Opinions of Wendy Aragaki, PMHNP-BC

Wendy Aragaki, PMHNP-BC ("NP Aragaki") is Plaintiff's treating mental health provider. On January 23, 2023, NP Aragaki completed a Medical Opinion Re: Ability To Do Work-Related Activities (Mental). (AR 2420-23). In this assessment, NP Aragaki opined that Plaintiff has "poor or none" ability to (i) maintain attention for two-hour segments; (ii) maintain regular attendance and punctuality; (iii) work in coordination with others or proximity to others without being unduly distracted; (iv) complete a normal workday and workweek without interruptions from psychologically based symptoms; (v) perform at a consistent pace; and (vi) deal with normal work stressors. (AR 2420-22). NP Aragaki noted that Plaintiff's "[l]abile mood, chronic depression is often exacerbated by [Plaintiff's] chronic pain and fatigue," which causes "difficulty" with concentration, performance, and maintaining a "normal work pace." (AR 2421). NP Aragaki also noted that unfamiliar surroundings and unplanned events cause Plaintiff increased anxiety, contributing to her continual isolation at home "and often just her room due to medical and mental health deterioration." (AR 2422). NP Aragaki estimated that Plaintiff could miss more than three days of work per month as a result of her impairments and that eight-hour workdays do not appear to be feasible as Plaintiff requires unscheduled breaks more than three to four times per day. (AR 2423).

On January 23, 2023, NP Aragaki also completed a Mental Impairment Questionnaire. (AR 2780-88). NP Aragaki noted Plaintiff's diagnoses of major depressive disorder, premenstrual dysphoric disorder ("PMDD"), and post-traumatic stress disorder ("PTSD") related to physical trauma, as well as diabetes mellitus, hypothyroidism, insomnia, and complex regional pain syndrome. (AR 2780). She reported Plaintiff's Global Assessment of Functioning score for the past year as 55, and her current Global Assessment of Functioning score as 58. (*Id.*). NP Aragaki noted that Plaintiff has experienced "marginal improvement, slow progress with extended periods of therapy and continual medication management for the past 1.5 years." (*Id.*). NP Aragaki indicated Plaintiff experiences

numerous symptoms including depressed mood, "[d]iminished interest in almost all activities," appetite disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of death or suicide, restlessness, easy fatigability, irritability, muscle tension, and sleep disturbances. (AR 2782). She also assessed "marked" limitations in Plaintiff's ability to concentrate, persist, or maintain pace and in her ability to regulate emotions, control behavior, and maintain well-being in a work setting. (AR 2783). NP Aragaki opined that Plaintiff's psychiatric conditions exacerbate her experience of pain and other physical symptoms. (AR 2784). She estimated that Plaintiff would likely be absent from work approximately three days per month due to her impairments and "possibly 4 or more." (AR 2785).

The ALJ found NP Aragaki's opinions unpersuasive, noting that they are in a "checklist form" and stating they are "not consistent with record or supported by Nurse Aragaki's treatment history with the claimant." (A.R. 33). The ALJ noted that throughout the record, Plaintiff's "memory appeared to be good," she "appeared to function in the average range of intelligence," had good insight and judgment, and engaged in daily activities like reading, doing chores, and playing video games. (*Id.*). The ALJ also stated that NP Aragaki's treatment notes showed that Plaintiff's mental status examinations were "largely unremarkable," recounting observations that Plaintiff was dressed/groomed appropriately, alert, and had normal speech quantity. (*Id.*).

It is the ALJ's burden to explain how he or she "considered the medical opinion's supportability and consistency in a manner grounded in substantial evidence." *Mascarenas v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00641-PHX-SPL, 2022 WL 2448279, at *5 (D. Ariz. July 6, 2022) (citing *Woods*, 32 F.4th at 792); *see also* 20 C.F.R. §§ 404.1520c(b), (c). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. An ALJ must "articulate . . . how persuasive" he or she finds "all of the medical opinions," 20 C.F.R. § 404.1520c(b),

and "explain how [he or she] considered the supportability and consistency factor" in making those findings, 20 C.F.R. § 404.1520c(b)(2).

The undersigned concurs with Plaintiff that the ALJ's analysis fails to adequately address the supportability of NP Aragaki's opinions. (Doc. 19 at 18). The Commissioner argues that the presentation of NP Aragaki's opinions in a checkbox format renders the opinions of "little evidentiary value." (Doc. 21 at 4). The Ninth Circuit has clarified that "[a]n ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Although an opinion cannot be rejected merely for being expressed as answers to a checkbox questionnaire, "the ALJ may permissibly reject check-off reports that do not contain *any* explanation of the bases of their conclusions." *Id.* (emphasis added; citations and internal quotation marks omitted). Here, unlike the opinions at issue in *Ford*, NP Aragaki did not rely solely on a checkbox format but also provided narrative explanations and clinical findings to support her assessed limitations. (A.R. 2422, 2780-81, 2784, 2786-87). The undersigned does not find the fact that many of NP Aragaki's opinions were provided in a checkbox format alone justifies discounting the opinions. The ALJ did not sufficiently explain how the cited normal findings, such as good memory, intelligence, grooming, and speech, undermine the specific limitations NP Aragaki assessed. By focusing on a few normal observations without comprehensively addressing the objective medical evidence and NP Aragaki's own treatment notes that could corroborate or detract from her assessed limitations, the ALJ's decision lacks a sufficient analysis of the supportability factor.[3] (Doc. 19 at 18).

For the above reasons, the undersigned agrees with Plaintiff that the ALJ provided legally insufficient reasons for finding NP Aragaki's opinions unpersuasive. This error is harmful and requires remand.

---

[3] Plaintiff does not assert that the ALJ failed to sufficiently address the consistency factor.

- 10 -

### D. The ALJ's Decision Fails to Sufficiently Evaluate Plaintiff's Symptom Testimony

When evaluating a claimant's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms. Rather, a claimant must only show that it could have caused some degree of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a claimant meets the first step, and there is no evidence of malingering, the ALJ can only reject a claimant's testimony about the severity of his or her symptoms by offering clear and convincing reasons that are supported by substantial evidence in the record. *Lingenfelter*, 504 F.3d at 1036. In evaluating a claimant's symptom testimony, the ALJ can consider many factors including: a claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 416.929(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence). In addition, although the lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in evaluating the testimony. *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005); *see also* 20 C.F.R. § 416.929(c); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff testified that she has complex regional pain syndrome and plantar fasciitis in both feet, which causes her to feel like there are "cinderblock bricks stacking and pressing [her] feet together." (A.R. 1135). She explained that this foot pain makes it difficult for her "to get around and be ambulatory because the pain is both on the bottom

of [her] feet as well as the top, around the toes." (*Id.*). She stated that she can only wear flip-flops or other open-toed shoes due to chronic pain and sensitivity in her toes. (A.R. 1142). Plaintiff estimated that she must elevate her legs twenty minutes every hour. (A.R. 1143). Plaintiff also testified that she suffered a traumatic brain injury with post-concussive syndrome "that has caused impulsive behaviors, unreliable memory, cognitive fatigue, as well as unreliable sense of self." (*Id.*).

The ALJ discounted Plaintiff's symptom testimony as inconsistent with the overall record, which the ALJ characterized as showing "conservative treatment, [ ] largely unremarkable consultative examinations, and routinely intact examination findings." (A.R. 28). However, as Plaintiff argues, this characterization does not fairly represent the record. (Doc. 19 at 21-23). Plaintiff's treating providers diagnosed her with complex regional pain syndrome, diabetic neuropathy, peripheral vascular disease, and noted findings such as fatigue, joint and muscle pain, cold intolerance, and tenderness and hypersensitivity in her feet. (A.R. 1573, 2153, 2791, 2796-97). Consultative examiner Erica Neal, P.A. observed reduced strength in Plaintiff's upper and lower extremities and tenderness to palpation, and assessed Plaintiff as having complex regional pain syndrome, depression, anxiety, and a history of traumatic brain injury. (A.R. 2155-56). Psychological consultative examiner M. David McGady, Psy.D. noted that Plaintiff displayed "typical pain behaviors, including grimacing, groaning, and muscle stiffness." (A.R. 2394). Dr. McGady noted that it "did not appear as if [Plaintiff's] symptoms were exaggerated or feigned." (A.R. 2395). Treating provider NP Valerie Ziske reported that Plaintiff has "constant burning" and throbbing foot pain worsened by walking, driving, cold weather, and stress. (A.R. 2828).

The Court cannot affirm an ALJ's decision on a ground not asserted by the ALJ. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Here, the ALJ's summary rejection of Plaintiff's symptom testimony as inconsistent with "conservative treatment" and "largely unremarkable" findings, without further explanation, requires the Court to speculate as to how the cited evidence undermines Plaintiff's allegations. *See id.* at 494; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically

which symptom testimony is not credible and what facts in the record lead to that conclusion."). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

"The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "Sheer disbelief" of the severity of a claimant's symptoms "is no substitute for substantial evidence." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). The undersigned finds that the ALJ's failure to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony constitutes harmful error and requires remand.

### E. Recommended Remand for Further Proceedings

Ninth Circuit jurisprudence "requires remand for further proceedings in all but the rarest cases." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014). The Ninth Circuit, however, has adopted a test to determine when a case should be remanded for payment of benefits in cases where an ALJ has improperly rejected claimant testimony or medical opinion evidence. *Id.* at 1100-01; *Garrison*, 759 F.3d at 1020. This test is commonly referred to as the "credit-as-true" rule, which consists of the following three factors:

1. Has the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion? *Treichler*, 775 F.3d at 1100-01.

2. Has the record been fully developed, are there outstanding issues that must be resolved before a disability determination can be made, or would further administrative proceedings be useful? *Id.* at 1101. To clarify this factor, the Ninth Circuit has stated that "[w]here there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*.

>3. If the improperly discredited evidence were credited as true, would the ALJ be required to find the claimant disabled on remand? *Id.*; *Garrison*, 759 F.3d at 1020.

Where a court has found that a claimant has failed to satisfy one of the factors of the credit-as-true rule, the court does not need to address the remaining factors. *Treichler*, 775 F.3d at 1107 (declining to address final step of the rule after determining that the claimant has failed to satisfy the second step). Moreover, even if all three factors are met, a court retains the discretion to remand a case for additional evidence or to award benefits. *Id.* at 1101-02. A court may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021. In *Treichler*, the Ninth Circuit noted that "[w]here an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." 775 F.3d at 1105.

Rather than seeking an immediate award of benefits, Plaintiff requests that the Court remand this matter for further administrative proceedings. (Doc. 19 at 24; Doc. 22 at 7). After reviewing the record, the undersigned finds that remand for further proceedings is the appropriate remedy in this case. While the record contains evidence supporting Plaintiff's claim of disability, including her subjective complaints of severe foot pain and complex regional pain syndrome (*see e.g.*, AR 709, 712, 1134-1136, 2785, 2828), there is conflicting evidence that casts serious doubt on whether Plaintiff is in fact disabled. For example, examination findings frequently showed normal or only mildly limited range of motion, tenderness, and hypersensitivity, with normal motor strength, and no swelling or atrophy (*see e.g.*, AR 2039, 2055-2057, 2156, 2797, 2170). The ALJ also noted that, despite her allegations, there was no record of a treating source prescribing an assistive device for ambulation or requiring continuous elevation of her legs. (AR 29).

Given the inconsistencies and ambiguities in the record, the undersigned recommends that the Court remand this matter for further proceedings. *See Treichler*, 775

F.3d at 1105 (noting that where "an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency").

### III. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that the Court reverse the Administrative Law Judge's April 4, 2023 decision (A.R. 21-42), as upheld by the Appeals Council (A.R. 1-7).

**IT IS FURTHER RECOMMENDED** that the Court remand this case to the Social Security Administration for further proceedings.

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 27th day of September, 2024.

Honorable Eileen S. Willett
United States Magistrate Judge